**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------ X

ARGONAUT INSURANCE COMPANY

                               Plaintiff,

    v.

MATTHEW D. ROSEN, MARVIN ROSEN, PHILIP D.
TURITS, JOHN ROSEN, MICHAEL DEL GUIDICE,
LARRY BLUM, WILLIAM RUBIN, PAUL O'BRIEN,
HOLCOMBE T. GREEN, JR., HOLCOMBE T.
GREEN, III, LEWIS DICKEY, and RAFE DE LA
GUERONNIERE.

                               Defendants.

------------------------------------------------------------------ X

No.:

**COMPLAINT FOR**
**DECLARATORY JUDGMENT**

**JURY TRIAL DEMANDED**

      Plaintiff, Argonaut Insurance Company ("Argonaut"), by its attorneys, Robinson & Cole

LLP, as and for its Complaint for Declaratory Judgment against Defendants, Matthew D. Rosen,

Marvin Rosen, Philip D. Turits, John Rosen, Michael Del Guidice, Larry Blum, William Rubin,

Paul O'Brien, Holcombe T. Green, Jr., Holcombe T. Green, III, Lewis W. Dickey, and Rafe De

La Gueronnier (collectively, the "Defendants") alleges as follows:

## INTRODUCTION

      1.     This is an action for declaratory judgment pursuant to 28 U.S.C. §§ 2201-2202.

Argonaut seeks a ruling from this Court determining that it is not obligated to indemnify the

Defendants under a Directors and Officers Liability ("D&O") insurance policy that Argonaut

issued to Fusion Connect, Inc. ("Fusion"), in connection with any claims or demands for monetary

relief made by Neal P. Goldman, in his capacity as the Litigation Trustee for the Fusion Litigation

Trust (the "Litigation Trustee") against the Defendants, alleging that the Defendants committed

wrongful acts, omissions or breaches of fiduciary duty in their capacity as officers and directors of

Fusion in connection with the merger of Fusion with Birch Communications Holdings, Inc. ("Birch") (the "Litigation Trust Demand").

2.      The Litigation Trustee notified Defendants that its investigation has identified claims for relief that exist and circumstances that may give rise to claims for relief against the Defendants in their capacity as officers and directors of Fusion in connection with Fusion's merger with Birch, which allegedly harmed Fusion, its estate and its creditor beneficiaries.  The Litigation Trust has made a confidential settlement demand on Defendants in exchange for a full release of such claims for relief short of litigation.  The Litigation Trustee has provided Defendants with a draft Complaint, which it reserves the right to file in court if Defendants do not settle.  Attached as Ex. 1 is a true copy of the Draft Complaint.

3.      To date, two of the Defendants have provided formal notice to Argonaut of the Litigation Trust Demand made upon them and seeking coverage for the Litigation Trust Demand from Argonaut under D&O Professional Liability Policy, No. ML 4209073-0 (the "Argonaut Policy") issued to Fusion for the policy period <u>May 4, 2018 to June 30, 2019</u>.  Attached as Ex. 2 is a true copy of the Argonaut Policy.

4.      After investigation, Argonaut determined that no coverage is available for the Defendants under the Argonaut Policy for the Litigation Trust Demand, because the transactions, situations, facts and circumstances that form the basis of the Litigation Trust Demand occurred, in whole or in part, <u>prior to May 4, 2018 – a negotiated contractual date that eliminates coverage for any **Claim** (boldfaced terms are defined terms in the Argonaut Policy) alleging wrongful conduct that occurred prior to May 4, 2018 (the "Prior Acts Date")</u> under the Argonaut Policy.  Moreover, with respect to wrongful conduct alleged by the Litigation Trust to have occurred on or after May 4, 2018, any such alleged acts share a common nexus with the pre-May 4, 2018 acts, such that the

Prior Acts Exclusion in the Argonaut Policy precludes coverage for all acts alleged or to be alleged in the Litigation Trust Demand.

5.      Argonaut is prepared to advance **Defense Costs** on behalf of the Defendants in connection with the Litigation Trust Demand, on an interim basis, and subject to a full and complete reservation of its rights, including the right to maintain that there is no coverage available for the Defendants under the Argonaut Policy for the Litigation Trust Demand, as well as Argonaut's right to seek recoupment of any advanced **Defense Costs** in the event and to the extent that Defendants are not entitled to coverage for the Litigation Trust Demand under the Argonaut Policy.

6.      Accordingly, Argonaut seeks a declaratory judgment from this Court that the Prior Acts Exclusion precludes coverage for the Litigation Trust Demand under the Argonaut Policy, and therefore Argonaut and does not have a duty to advance **Defense Costs** to, or indemnify Defendants for, the Litigation Trust Demand; and (b) is entitled to repayment of any and all **Defense Costs** Argonaut advances on behalf of the Defendants in connection with the Litigation Trust Demand.

## JURISDICTION AND VENUE

7.      This action is filed under and pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202.

8.      Jurisdiction over this action is invoked pursuant to 28 U.S.C. § 1332 (a)(1) because there is complete diversity of citizenship between the parties.

9.      The matter in controversy exceeds, exclusive of interest and cost, the sum of seventy-five thousand dollars ($75,000), because the limit of liability provided by the Policy is $5 million.

23539732v.1

10.     Venue in this district is proper, pursuant to 28 U.S.C. § 1391 (b)(2), as a judicial district in which a substantial part of the events or omissions giving rise to the instant claim occurred, because the events forming the basis of the Litigation Trust Demand occurred in this district.

11.     An actual case and controversy of a justiciable nature exists between the parties, involving the rights and obligations of the parties under the Argonaut Policy.

## THE PARTIES

12.     Plaintiff Argonaut Insurance Company is a corporation organized and existing under the laws of the state of Illinois with a principal place of business in Illinois.

13.     Defendant Matthew Rosen is the former Chief Executive Officer of Fusion and was a member of Fusion's board of directors beginning in 2005.  After the Merger, Rosen remained the CEO of New Fusion as well as the chair of New Fusion's board of directors, and served in those roles until October 7, 2019 and January 14, 2020, respectively.  Upon information and belief Matt Rosen resides in New York, New York.

14.     Defendant Marvin Rosen ("Marvin Rosen") is Rosen's father. Marvin Rosen was a co-founder of Fusion. He was the chair of Fusion's board of directors at its inception and remained the chair of its board of directors through the time of its merger with Birch, after which he served as a director on New Fusion's board of directors until January 14, 2020. At all relevant times, Marvin Rosen was a partner of the law firm Greenberg Traurig LLP, which served as counsel to Fusion during the Merger.  Upon information and belief Marvin Rosen resides in Miami, Florida and New York, New York.

15.     Defendant Philip D. Turits ("Turits") was a co-founder of Fusion. Turits was a member of Fusion's board of directors at its inception and remained a director through the time of its merger with Birch.  Upon information and belief Turits resides in Stamford, Connecticut.

16.     Defendant John "Jack" Rosen ("Jack Rosen") was a member of Fusion's board of directors beginning in 2012 through the time of its merger with Birch.  Upon information and belief, Jack Rosen resides in New York, New York.

17.     Defendant Lawrence "Larry" Blum ("Blum") was a member of Fusion's board of directors beginning in 2012 through the time of its merger with Birch.  Upon information and belief Blum resides in Miami, Florida.

18.     Defendant Michael Del Giudice ("Del Giudice") was a member of Fusion's board of directors beginning in 2004 through the time of its merger with Birch, after which he served on New Fusion's board of directors until January 14, 2020.  Upon information and belief Giudice resides in Palm Beach, Florida.

19.     Defendant Paul O'Brien ("O'Brien") was a member of Fusion's board of directors beginning in 1998 through the time of its merger with Birch.  Upon information and belief O'Brien resides in Naples, Florida.

20.     Defendant William Rubin ("Rubin") was a member of Fusion's board of directors beginning in 2012 through the time of its merger with Birch.  Upon information and belief Rubin resides in Plantation, Florida.

21.     Defendant Holcombe T. Green, Jr. ("Green") was the controlling shareholder of Birch, owning (along with family members) approximately 67% of the company, and then became the controlling shareholder of New Fusion, controlling more than 65% of its shares, and the vice-

chair of New Fusion's board of directors after Fusion's merger with Birch until January 14, 2020. Upon information and belief Green resides in Atlanta, Georgia.

22.     Defendant Holcombe T. Green, III ("Green III") is Green's son and was a member of New Fusion's board of directors after Fusion's merger with Birch until January 14, 2020.  Upon information and belief Green III resides in New York, New York.

23.     Defendant Lewis W. Dickey ("Dickey") was a member of New Fusion's board of directors after Fusion's merger with Birch until January 14, 2020. Dickey was appointed to the board as a designee of Birch's shareholders.  Upon information and belief, Dickey resides in Atlanta, Georgia

24.     Defendant Rafe de la Gueronniere ("de la Gueronniere") was a member of New Fusion's board of directors after Fusion's merger with Birch until January 14, 2020.  Upon information and belief De la Gueronniere resides in New York, New York.

25.     Defendant Michael Del Giudice ("Del Giudice") was a member of Fusion's board of directors beginning in 2004 through the time of its merger with Birch, after which he served on New Fusion's board of directors until January 14, 2020.  Upon information and belief Del Giudice resides in New York, New York.

## **FACTUAL BACKGROUND**

## **The Litigation Trust Demand**

26.     The Litigation Trust Demand alleges that, from August 2017 until May 4, 2018, Matt Rosen wrongfully failed to accurately and completely present Birch's financial results to the Fusion Directors, and the Fusion Directors failed to ask for or review Birch's actual financial results, in the time leading up to the Merger, ultimately leading to Fusion's bankruptcy.  The Litigation Trust Demand alleges it is prepared to assert causes of action for Breach of Fiduciary Duty (against Matt Rosen and the Fusion Directors), Unjust Enrichment (against Matt Rosen),

Waste (against the Fusion Directors and New Fusion Directors), Equitable Subrogation (against Matt Rosen, Marvin Rosen, Turits, del Giudice, de la Gueronniere and Dickey) and Breach of Fiduciary Duty (Faithless Servant) (against Matt Rosen).  These causes of action are all based upon the following alleged acts that occurred, in whole or in part, prior to the May 4, 2018 inception of the Argonaut Policy and Prior Acts Date:

    **a.**  When Fusion began negotiating a potential merger with Birch in April 2017, Birch had substantial debt, was in the midst of management turnover, had limited liquidity and was unable to provide further cash dividends to Birch's shareholders.  Matt Rosen knew or should have known this information from conducting due diligence on Birch prior to the Merger.

    **b.**  On June 12, 2017, Birch provided Fusion with a formal indication of interest for the merger, which indicated that the merged company would retain the Fusion name,  that Matt Rosen would be named CEO and Chairman of the board of the combined company, and that Birch would receive a $25 million dividend.

    **c.**  A private equity firm that was also interested in making a proposal to purchase Fusion conducted due diligence on Fusion throughout the early summer of 2017 and submitted a letter of intent for a cash buyout on July 25, 2017, but Matt Rosen and Marvin Rosen would not receive any cash as part of this transaction, and it was not guaranteed that Matt Rosen would remain CEO.

    **d.**  In mid-July 2017, Matt Rosen reached a verbal agreement on key terms with Birch.

    **e.**  On July 28, 2017, Matt Rosen briefed the Fusion board on the Birch deal, and informed the Fusion board of discussions with the private equity firm but did

not update the board on the offer from the private equity firm or negotiate further with the private equity firm after this time.  The Fusion board rejected the requested $25 million dividend that was part of the Birch indication of interest.

f.   Matt Rosen agreed that Birch could divest its Consumer Business to the Birch shareholders prior to the Merger (valued at $25 million), without any consideration to Fusion, and without any accompanying debt—meaning that Fusion was purchasing fewer assets without any corresponding reduction in debt.

g.   Matt Rosen ignored several red flags throughout the negotiation process with Birch, including an <u>August 2017</u> negative outlook from a leading ratings agency and a report from Fusion's advisory firm raising concerns about Birch's financials after conducting a review in <u>July and August 2017</u>.

h.   The Fusion board approved the Birch transaction at its <u>August 24-25, 2017</u> board meeting, turning a blind eye to the conflicts of Matt and Marvin Rosen in negotiating the Birch deal.

i.   The Merger Agreement was executed on <u>August 26, 2017</u>.  The parties were entitled to terminate the Merger Agreement if financing commitments were not received by <u>October 25, 2017</u>.

j.   On <u>September 30, 2017</u>, Birch's financial results for Q3 2017 became available to Fusion, which showed that Birch's revenue fell, and that Birch had low levels of liquidity.  Following these financial results, the parties were unable to secure

23539732v.1

commitments from lenders, and therefore unable to meet the financing deadline for the Merger.

k.   Although Fusion could have abandoned the deal without penalty, the Fusion board did not consider terminating the Merger Agreement.  Instead, the day before the deadline for securing financing, Fusion and Birch amended the Merger Agreement, agreeing to extend the financing deadline until <u>December 24, 2017</u>.

l.   The parties remained unable to secure financing and the December 24, 2017 deadline expired, but Fusion still did not terminate the Merger Agreement, despite Birch's deteriorating performance.  Instead, on <u>December 29, 2017</u>, Fusion filed a definitive proxy statement (the "Proxy Statement"), including information about the Merger, but omitting key details, including:  the Advisory Firm report on Birch's financials, the private equity firm's interest in Fusion, Birch's financial decline, updated projections for the financial performance of New Fusion, agreements regarding Green and Rosen's future compensation at New Fusion, accurate information about Birch's assets, an additional planned merger transaction with MegaPath, an accurate portrayal of the financing package and liquidity projections for the combined new entity.

m.   At the <u>January 3, 2018</u> Fusion board meeting, Matt Rosen failed to inform the Fusion directors of Birch's deteriorating financial performance, and the Fusion directors did not exercise their right to terminate the transaction.

n.   By <u>January 24, 2018</u>, a month had passed since the new deadline to secure financing, but Matt Rosen and the Fusion directors did not consider whether to

abandon the Merger.  Although information was known to Matt Rosen, and could have been available to the Fusion directors, which indicated that Birch's assets were overstated by $99 million (at a time when its assets totaled less than $350 million), and that Birch's accounting would likely require a restatement, such information was not disclosed to Fusions shareholders prior to the Merger. Instead, on <u>January 24, 2018</u>, Matt Rosen agreed with Birch to a retroactive extension of the December 24, 2017 deadline to <u>April 3, 2018</u>.

o.  By <u>February 2018</u>, Matt Rosen was negotiating details regarding his new employment agreement and compensation package with Birch.  On <u>February 19, 2018</u>, Fusion's compensation committee met and approved special bonuses for themselves and Matt Rosen.

p.  On <u>February 21, 2018</u>, Fusion held its annual shareholder meeting during which the Merger was approved on the basis of inadequate information in the Proxy Statement.

q.  Birch's financial performance and liquidity continued to decline.  On <u>April 3, 2018</u>, the financing deadline lapsed again, yet Matt Rosen and the Fusion directors did not consider terminating the agreement, and instead on <u>April 4, 2018</u>, extended the deadline again to secure financing by <u>April 30, 2018</u>, and close by <u>May 10, 2018</u>.

r.  On <u>April 30, 2018</u>, Fusion announced that following the Merger with Birch, Fusion would also merge with MegaPath, and $25 million of the deal financing would be used as cash collateral and could not be used for any other purpose.

27.     The Merger finally closed on <u>May 4, 2018</u> (*i.e.*, the day the Argonaut Policy incepted and the Prior Acts Date).  The Litigation Trust Demand alleges that after the Merger closed, the following took place:

a.  Matt Rosen *continued* to negotiate his employment agreement with New Fusion, which was finally executed in November 2018.

b.  Matt Rosen and the New Fusion Directors took no action to address Birch's financial condition following the Merger, and as soon as it began operations New Fusion missed its projections, as its revenue *continued* to decline.

c.  In August 2018, New Fusion's CFO Kevin Dotts suddenly resigned.  While the new CFO Keith Soldan announced that New Fusion urgently needed to raise $75 million of equity, those efforts necessarily were abandoned because the company was obligated to report a Sarbanes-Oxley material weakness in internal controls—related to its inability to present Birch's *historical* books and records—a problem that had been *identified back in August 2017*.

d.  On April 1, 2019, New Fusion was unable to make payment to its lenders under its financing agreements, and the following day it announced Birch's accounting irregularities requiring a restatement, which *should have been discovered prior to the Merger*.

e.  New Fusion ultimately restated its financials for 2017 and 2018, and filed for bankruptcy on June 3, 2019, which was *entirely foreseeable prior to the Merger*.

-11-

**The Policy**

28.     Argonaut issued D&O Professional Liability Policy, No. ML 4209073-0 to Fusion,

effective for the policy period <u>May 4, 2018 to May 4, 2019</u>, which was subsequently amended by

Endorsement 22 to include the period through June 30, 2019. A copy of the Argonaut Policy is

attached as <u>Exhibit A</u>.

29.      The Argonaut Policy provides a $5 million Limit of Liability subject to a $250,000

Retention for all **Securities Claims**, and a $1 million Retention for all **Mergers & Acquisitions**

**Claims**.

30.     The Argonaut Policy provides coverage for **Claims** first made against the **Insureds**

<u>during the</u> **Policy Period** <u>or the</u> **Extended Reporting Period**. The Limits of Liability of the

Argonaut Policy shall be reduced by amounts incurred as **Defense Costs**, and **Defense Costs** shall

be subject to the Retention. Argonaut does not assume any duty to defend the **Insureds** under the

Argonaut Policy.

31.     Section I.B. to the Argonaut Policy (Insuring Agreements – Company

Reimbursement Coverage) provides that:

> The **Insurer** shall pay **Loss** of the **Company** for **Loss** arising from a **Claim** […] first made
> during the **Policy Period** […] against any **Insured Person(s)** for a **Wrongful Act**, if the
> **Company** is permitted or required to indemnify the **Insured Person(s)** for such **Loss**.

32.      Section II.B to the Argonaut Policy defines **Claim** as, in relevant part:

1.      a written demand against any **Insured** for monetary damages;

2.      a civil proceeding against any Insured commenced by the service of a
        complaint or similar pleading;

. . .

7.      an arbitration, mediation or any other alternative dispute resolution
        proceeding against any **Insured**;

. . .

33.     Section III.B to the Argonaut Policy contains the following Prior Acts Exclusion, as amended by Endorsement No. 5:

> The **Insurer** shall not be liable to make payment for **Loss**, in connection with any **Claim** made against any **Insured** based upon, arising out of, directly or indirectly resulting from, in consequence of, attributable to or in any way involving:
>
>> 1. any act, omission, fact, circumstance, situation, transaction, and/or event which occurred, or is alleged to have occurred, in whole or in part, prior to May 4, 2018, including any act, omission, fact, circumstance, situation, transaction, and/or event which would otherwise be considered a **Wrongful Act**; or
>>
>> 2. any act, omission, fact, circumstance, situation, transaction, and/or event, whenever occurring or allegedly occurring, which together with an act, omission, fact, circumstance, situation, transaction, and/or event described in 1. above are causally or logically interrelated by a common nexus or constitute **Interrelated Wrongful Acts**.

34.     **"Interrelated Wrongful Acts** means all **Wrongful Acts** that have as a common nexus any fact, circumstance, situation, event, transaction, cause or series of logically or causally connected facts, circumstances, situations, events, transactions or causes."   Argonaut Policy, Definition P.

35.     Section V.C to the Argonaut Policy, Defense, Settlement and Cooperation, provides, in relevant part:

> If any advance payments of . . . **Defense Costs . . .** are made by the **Insurer**, the **Insured(s)** agree(s) to repay the **Insurer**, severally according to their respective interests, all such payments in the event that it is determined that any such **Insured** is not entitled to payment of such **Loss** under the terms of this Policy.

**Coverage Correspondence**

36.     On March 12, 2021, counsel for Matt Rosen provided "formal notice of claim" of the Litigation Trust Demand.

37.     On March 29, 2021, Argonaut reserved all rights regarding whether coverage is available under the Argonaut Policy based upon the Prior Acts Exclusion, because the acts alleged in the Litigation Trust Demand either occurred prior to the May 4, 2018 Merger, or constituted

"any act, omission, fact, circumstance, situation, transaction, and/or event, whenever occurring or allegedly occurring, which together with [the due diligence that occurred prior to May 4, 2018 is] causally or logically interrelated by a common nexus or constitute **Interrelated Wrongful Acts**."[1]

## AS FOR A FIRST CAUSE OF ACTION
### (Prior Acts Exclusion)

38.     Plaintiff repeats and re-alleges the allegations set forth in Paragraphs 1 through 37, inclusive, as though each were fully set forth herein.

39.     The Argonaut Policy, Section III.B, as amended by Endorsement No. 5, provides:

The **Insurer** shall not be liable to make payment for **Loss**, in connection with any **Claim** made against any **Insured** based upon, arising out of, directly or indirectly resulting from, in consequence of, attributable to or in any way involving:

> 1. any act, omission, fact, circumstance, situation, transaction, and/or event which occurred, or is alleged to have occurred, in whole or in part, prior to May 4, 2018, including any act, omission, fact, circumstance, situation, transaction, and/or event which would otherwise be considered a **Wrongful Act**; or
>
> 2. any act, omission, fact, circumstance, situation, transaction, and/or event, whenever occurring or allegedly occurring, which together with an act, omission, fact, circumstance, situation, transaction, and/or event described in 1. above are causally or logically interrelated by a common nexus or constitute **Interrelated Wrongful Acts**.

(emphasis added.)

39.     As set forth above, the Litigation Trust Demand alleges that between April 2017 and May 4, 2018, Matt Rosen and the Fusion board were aware (or should have been aware) of numerous red flags regarding Birch's financials, which should have caused Fusion to terminate any merger discussions with Birch, including:

> a.   The August 2017 Ratings Agency's negative outlook regarding Birch;

---

[1] Argonaut also reserved all other rights under the Policy, at law and in equity, and continues to reserve such other rights, including without limitation that the Argonaut Policy does not provide coverage for settlements or judgments constituting Unjust Enrichment, Waste or Equitable Subrogation amounts.

23539732v.1

b.  The concerns raised by the Advisor Firm's July and August 2017 review of Birch's financials;

c.  Birch's falling liquidity and declining financial condition which should have been obvious by at least September 30, 2017, if not earlier;

d.  The fact that it was known in January 2018 that Birch's assets were overstated and would likely need to be restated; and

e.  Matt and Marvin Rosen's conflicts with respect to negotiating the Merger, including their failure to inform the Fusion board of the private equity firm's offer in the summer of 2017 and the details of Matt Rosen's employment agreement with New Fusion that he was negotiating by February 2018;

f.  The misleading December 29, 2017 Proxy Statement regarding Birch's financials and the financial projections for New Fusion; and

g.  The extension of the financing deadline between October 25, 2017 and April 30, 2018 without consideration of terminating the Merger Agreement.

40.     The only allegations in the Litigation Trust Demand that took place after the May 4, 2018 Merger, are *continuations* of actions from prior to the Merger, and as such constitute **Interrelated Wrongful Acts** with events that took place prior to the Merger and are therefore also excluded from coverage under the Argonaut Policy.  The continuation of actions that began prior to the Merger include:

a.  Matt Rosen *continued* to negotiate his New Fusion employment deal;

b.  Defendants *continued* to ignore Birch's declining financials;

c.  New Fusion had to report a material weakness under Sarbanes-Oxley based on Birch's accounting issues that *had been identified in August 2017*; and

-15-

     d.   New Fusion filed for bankruptcy—a result that should have been discovered *prior to the Merger.*

41.    Because the Litigation Trust Demand is based on acts that occurred prior to the May 4, 2018 Merger (*i.e.*, the Prior Acts Date), or constitute "any act, omission, fact, circumstance, situation, transaction, and/or event, whenever occurring or allegedly occurring, which together with [the due diligence that occurred prior to May 4, 2018 is] causally or logically interrelated by a common nexus or constitute **Interrelated Wrongful Acts**" there is no coverage for any of the allegations in the Litigation Trust Demand.

42.    Argonaut seeks a declaration that it does not have a duty to advance **Defense Costs** or indemnify the Defendants under the Argonaut Policy in connection with the Litigation Trust Demand, pursuant to Argonaut Policy Section III.B., as amended by Endorsement No. 5.

## AS AND FOR A SECOND CAUSE OF ACTION
### (Declaratory Judgment – Argonaut is Entitled to Recoupment of Any Defense Costs it Advances)

43.    Plaintiff repeats and re-alleges the allegations set forth in Paragraphs 1 through 42, inclusive, as though each were fully set forth herein.

44.    As set forth above, Argonaut is entitled to a declaration that it does not have a duty to advance **Defense Costs** or indemnify the Defendants under the Policy in connection with the Litigation Trust Demand.

45.    Argonaut is prepared to advance **Defense Costs** on behalf of the Defendants in connection with the Litigation Trust Demand.

46.    Argonaut seeks a declaration that, in the event it is entitled to deny coverage for the Litigation Trust Demand, Argonaut is also entitled to full recoupment of any and all **Defense Costs** Argonaut advances on behalf of the Defendants in connection with the Litigation Trust Demand

pending a ruling by this Court as to whether Argonaut is entitled to deny coverage for the Litigation Trust Demand, which repayment right is contained  Section V.C of the Argonaut Policy.

**WHEREFORE**, Plaintiff Argonaut, respectfully requests that this Court declare and adjudge the controversy as follows:

1.      On the First Cause of Action, that coverage for the Litigation Trust Demand is excluded under the Argonaut Policy pursuant to the Prior Acts Exclusion (Section III.B, as amended by Endorsement No. 5).

2.      On the Second Cause of Action, that Argonaut is entitled to full recoupment of any and all **Defense Costs** Argonaut subsequently advances on behalf of the Defendants in connection with the Litigation Trust Demand (Section V.C).

3.      For such other different and further relief, decree or judgment as this Court may deem just and proper.

Dated: New York, New York
        March 29, 2021

                        **Robinson & Cole LLP**

        By:     _E. Kerstein_
                _____
                Erica J. Kerstein, Esq.
                Chrysler East Building
                666 Third Avenue, 20th Floor
                New York, NY 10017
                Phone:  212.451.2970
                Fax:  212.451.2999
                ekerstein@rc.com

                Attorneys for Plaintiff
                ARGONAUT INSURANCE COMPANY

-17-